# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**BREA UNION PLAZA I, LLC,**

        **Appellant,**

v.                                                  **Civil Action No. 3:18cv419**

**TOYS "R" US, INC. *et al.,***

        **Appellees.**

## MEMORANDUM OPINION

This matter comes before the Court on Appellant Brea Union Plaza I, LLC's ("Brea") Motion to Stay (the "Motion to Stay").[1] (ECF No. 2.) Appellees Toys "R" Us, Inc., *et al.* ("TRU") responded, (ECF No. 10), and Brea replied, (ECF No. 11). The matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[2]

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.[3] For the reasons that follow, the Court will deny the Motion to Stay. (ECF No. 2.)

---

[1] On July 3, 2018, the same day it filed the Motion to Stay, Brea filed a Motion to Expedite Consideration of the Motion to Stay (the "Motion to Expedite Consideration"). (ECF No. 4.) The Court ordered TRU to submit a position on Brea's Motion to Expedite Consideration. (ECF No. 6.) TRU did not oppose the Motion to Expedite Consideration. (ECF No. 7.) This Court ordered expedited briefing. (ECF No. 8.)

[2] "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

[3] Brea requested a hearing on the Motion to Stay. TRU did not seek oral argument. Scheduling among all parties proved difficult. Because the parties sought expedited consideration, and because both sides have presented adequate briefing, this decision issues.

## I. Factual and Procedural Background

In 1996, Toys "R" Us Delaware, Inc. ("TRU Delaware") opened a Babies "R" Us store in Brea Union Plaza in California pursuant to a lease between TRU Delaware and Brea Union Partners (the "TRU Lease"). Brea Union Plaza I, LLC ("Brea") is the successor in interest to Brea Union Partners.

In 2009, Brea entered into a lease with Ross Dress for Less, Inc. ("Ross") for another parcel in the same shopping center (the "Ross Lease"). The Ross Lease includes an exclusive-use provision prohibiting Brea from leasing any parcel to an entity that would sell "off-price" apparel in competition with Ross.

On February 27, 2018, as part of ongoing bankruptcy proceedings, TRU sought approval from the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") of bidding procedures to sell certain real property and unexpired real property leases, including the TRU Lease. The Bankruptcy Court approved TRU's proposed bidding process. Following the bidding process, TRU sought the Bankruptcy Court's approval to assign the TRU Lease to Burlington Coat Factory Warehouse Corporation ("Burlington").

Brea objected to the proposed assignment, claiming it would cause Brea to be in breach of the Ross Lease. The Ross Lease provides:

> No tenant or occupant of the Shopping Center (other than [Ross]) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price sale (as hereinafter defined) of apparel . . . .

(Mem. Supp. Mot. Stay ¶ 6 (alterations in original); *see also* Bankr. Docket No. 3590-7 4, ECF No. 3-2.)

On April 13, 2018, the Bankruptcy Court entered an order (the "Original Assignment Order") authorizing TRU to "consummate fifteen sale agreements and 28 lease termination

agreements." (Resp. ¶ 7 (citing Bankr. Docket No. 2715).) The Original Assignment Order did

not authorize the assignment of the TRU Lease from TRU to Burlington. On May 10, 2018, the

Bankruptcy Court held a hearing on the proposed lease assignment and on May 25, 2018, the

Bankruptcy Court entered a Memorandum Opinion and Order approving the assignment of the

TRU Lease to Burlington (the "Burlington Assignment"). On May 30, 2018, the Bankruptcy

Court made clerical changes to its original opinion and redocketed the opinion (the "Bankruptcy

Opinion"). On May 31, 2018, the Bankruptcy Court entered a supplemental order (the

"Supplemental Order") authorizing the assumption and sale of the TRU Lease from TRU to

Burlington and specifying that "all the relief granted in the Original [Assignment] Order shall

apply to the [Burlington Assignment], as applicable." (Mem. Supp. Mot. Stay ¶ 11 (citing Suppl.

Order 3, App. 467, ECF No. 3-5).)

On June 1, 2018, in accordance with the Bankruptcy Court's Supplemental Order, TRU

"executed the assumption and assignment agreement with Burlington and Burlington took

possession of and occupied the premises." (Resp. Mot. Stay ¶ 10, ECF No. 10.)

On June 13, 2018, Brea filed a Notice of Appeal in this Court (the "Appeal"), appealing

the Bankruptcy Opinion and the Supplemental Order. (ECF No. 1.) On June 20, Brea moved—

in the Bankruptcy Court—for a stay of the Bankruptcy Opinion and Supplemental Order pending

the Appeal in this Court. Brea also asked the Bankruptcy Court for an expedited hearing on its

Motion to Stay. After a June 25, 2018 hearing, the Bankruptcy Court denied Brea's Motion to

Stay.

On July 3, 2018, more than one month after TRU assigned the TRU Lease to Burlington,

Brea filed the Motion to Stay in this Court. Brea sought an expedited ruling on the Motion to

Stay, (ECF No. 4), which TRU did not oppose, (ECF No. 7). After full briefing, (ECF Nos. 10,

11), the Motion to Stay is ripe for adjudication. For the reasons that follow, the Court will deny the Motion to Stay.

## II. Analysis

### A.  Legal Standard for Stays Pending Appeal

The United States Court of Appeals for the Fourth Circuit has articulated the following test to determine whether a stay pending appeal should be granted:

> a party seeking a stay must show (1) that he [or she] will likely prevail on the merits of the appeal, (2) that he [or she] will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and[,] (4) that the public interest will be served by granting the stay.

*Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). This test applies to appeals from the Bankruptcy Court. *See, e.g.*, *In re Alpha Natural Res., Inc.*, 556 B.R. 249, 253 (Bankr. E.D. Va. 2016). The first two factors are the most important. *Realvirt, LLC v. Lee*, 220 F. Supp. 3d 704, 706 (E.D. Va. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### B.  Brea Fails to Meet Any of the Four Factors That Might Justify a Stay

To prevail on its Motion to Stay, Brea must satisfy the four-factor test articulated in *Robinson*. 432 F.2d 977. Because Brea fails to satisfy any of the factors, it cannot prevail on its Motion to Stay.

#### 1.  Brea Fails to Show that it Likely Will Prevail on the Merits of its Appeal

A party requesting a stay pending appeal *must* show that it is likely to prevail on appeal. *Robinson*, 432 F.2d at 979. The party need not prove certain victory on appeal. *Realvirt*, 220 F. Supp. 3d at 706. Instead, this factor asks "whether the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *Id.* at 706. Brea fails to meet this prong.

Brea articulates four reasons why it would prevail on the merits in the Appeal. First, Brea argues that the Bankruptcy Court erred in its interpretation and application of 11 U.S.C. § 365(b)(3)(C).[4] Section 365(b)(3)(C) requires that a bankruptcy court authorizing the assignment of a lease as part of an estate restructuring process assign the lease in a way that does not breach "any other lease." 11 U.S.C. § 365(b)(3)(C). Brea argued before the Bankruptcy Court, and again here, that this language implicates and applies to the Ross Lease. According to Brea, allowing TRU to assign the TRU Lease to Burlington will violate the exclusive-use provision in the Ross Lease. Applying the plain meaning of § 365(b)(3)(C), Brea contends, the Ross Lease is "any other lease" within the provision. 11 U.S.C. § 365(b)(3)(C). Thus, Brea posits, the authorized assignment violates § 365(b)(3)(C).

The Bankruptcy Court found Brea's arguments unpersuasive, noting that Brea's novel and broad interpretation "is not the ruling in any [] case cited by Brea." (Bankr. Docket No. 3290 App. 459, ECF No. 3-5.) This Court agrees. Nothing in the TRU Lease references or incorporates the exclusive-use provisions in the Ross Lease, and nothing that Brea puts before the Court establishes that assigning the TRU Lease to Burlington would breach the Ross Lease. On the record Brea currently presents to the Court, no indication exists that it would prevail on its argument that the Bankruptcy Court erred in its interpretation and application of 11 U.S.C. § 365(b)(3)(C).

_____

[4] 11 U.S.C. § 365 states, in relevant part:

> adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance [] that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center.

11 U.S.C. § 365(b)(3)(C).

Next, Brea argues that the Bankruptcy Court "overlooked the fact that section 15.3 of the Ross Lease contains <u>two</u> provisions protecting Ross's exclusive use." (Mem. Supp. Mot. Stay ¶ 43.) Section 15.3 of the Ross Lease provides:

> No tenant or occupant of the Shopping Center (other than [Ross]) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price sale (as hereinafter defined) of apparel . . . .

(Mem. Supp. Mot. Stay ¶ 6 (alterations in original); *see also* Bankr. Docket No. 3590-7 4, ECF No. 3-2.).

According to Brea, Section 15.3 not only prohibits Brea from permitting another tenant to sell off-price apparel *when it has the capacity to stop it* from doing so, but also prohibits any tenant from selling off-price apparel *without qualification.* Brea relies on a strained interpretation of the "syntactic structures" and the distinction between "shall" and "may" to argue that Section 15.3 creates two separate legal obligations: an obligation that Brea "shall not permit" the sale of off-price apparel, and a separate obligation that "no tenant may use" the premises for the off-sale price of apparel, regardless of circumstances. (Mem. Supp. Mot. Stay ¶ 44.) Brea's grammar-based argument lacks merit. Section 15.3 creates one legal obligation: that Brea stop other tenants from selling off-price apparel when it is capable of doing so. Brea's contrived arguments to the contrary do not comport with standard rules of English.

Brea, interpreting Section 15.3 as creating two separate legal obligations, claims the Bankruptcy Court overlooked the prohibition against the sale of off-price apparel. The Bankruptcy Court did not "overlook" the first clause of Section 15.3. Appropriately discussing Section 15.3 as a whole, the Bankruptcy Court held that, even were the Ross Lease "any other lease" under Section 364(b)(3)(C), the "assumption and assignment of the Lease to Burlington will not breach the exclusivity provision contained in the Ross Lease. The provision prohibiting

[Brea] from allowing a tenant to use the [p]remises to sell off-price apparel applies only if [Brea] 'has the capacity to do so.'" (Bankr. Docket No. 3290 App. 459, ECF No. 3-5.) The Bankruptcy Court concluded that this qualifying language insulated Brea from any liability for the assignment because Brea did not have the legal capacity to stop it. *Id.*

Brea's argument that the qualifying language does not apply to the clause stating that no other tenant may use the premises for the off-price sale of apparel does not persuade. The Court agrees with the Bankruptcy Court's finding that Section 15.3 insulates Brea from liability. Brea offers nothing additional in its Motion to Stay that would persuade the Court that the Bankruptcy Court incorrectly interpreted the provisions of the Ross Lease, or its relationship to the TRU Lease.

Third, Brea argues its appeal will not be "statutorily moot" under 11 U.S.C. § 363(m).[5] (Mem. Supp. Mot. Stay ¶ 49.) Described as a rule of "statutory mootness," § 363(m) "curtails the power of appellate courts to undo the authorized sale of estate assets to a good faith purchaser unless the sale has been stayed pending appeal." *In re Rare Earth Minerals*, 445 F.3d 359, 361 (4th Cir. 2006). Brea points to § 363(m)'s requirement that the Bankruptcy Court make a specific finding that Burlington is a good faith purchaser, claiming that no such finding on the record exists. (*Id.* ¶ 51.) TRU counters that the Supplemental Order incorporated the Bankruptcy Court's earlier finding in the Original Assignment Order, which found that all the

---

[5] Section 363(m) provides, in relevant part:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

purchasers were good-faith purchasers. (Resp. ¶ 23.) Brea misstates the record: through the

Supplemental Order, the Bankruptcy Court incorporated the Burlington Assignment into its

Original Assignment Order. The Supplemental Order provided that "*all* the relief granted in the

Original [Assignment] Order shall apply to the [Burlington Assignment]." (Mem. Supp. Mot.

Stay ¶ 11 (citing Suppl. Order (emphasis added)).) Brea's strained argument that the

Supplemental Order "only incorporated the 'relief granted' in the Original Assignment Order,

but not the findings made therein," lacks merit, and Brea cites to no case or statute in support.

(Reply ¶ 12, ECF No. 11.)

Finally, Brea argues the Appeal will not be dismissed on "equitable-mootness grounds."

(Mem. Supp. Mot. Stay ¶ 52.) "Equitable mootness is a pragmatic doctrine grounded in the

notion that, with the passage of time after a judgment in equity and implementation of that

judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable."

*In re Bate Land & Timber LLC*, 877 F.3d 188, 195 (4th Cir. 2017) (internal citations omitted).

Brea argues that the doctrine of equitable mootness would only apply to transactions "of

sufficient complexity such that they cannot be unwound." (Mem. Supp. Mot. Stay ¶ 53 (quoting

*In re Brown*, 354 B.R. 100, 112 (Bankr. N.D. W. Va. 2006)).) Brea contends the Burlington

Assignment would be easily unwound. *Id.* ¶ 54. Even were the Court to presume the Burlington

Assignment could be unwound easily, and were to further assume the Appeal would not be

dismissed on equitable-mootness grounds, those suppositions would only signal that the Appeal

would not summarily fail as equitably moot. Because it does not increase Brea's likelihood of

prevailing on the merits of its arguments on appeal, Brea's equitable-mootness argument does

not help Brea satisfy the first prong of the *Robinson* test. 432 F.2d at 979.

In Response to Brea's Motion to Stay, TRU indicates that TRU and Burlington already consummated the Burlington Assignment. In addition to claiming that this renders the Motion to Stay currently moot, TRU argues that Brea "is really seeking an injunction against Burlington—a non-party to this appeal—from taking further actions toward opening a store and otherwise enjoying the leasehold it purchased." (Resp. ¶ 13.) Although Brea counters that Burlington submitted to this Court's jurisdiction by engaging in the bidding process, Brea provides no evidence that the requested "stay" of the Bankruptcy Court's order would not amount to the equivalent of an injunction against Burlington pending the Appeal. Brea also fails to articulate a compelling reason this Court should impose such a drastic remedy against Burlington.

Considering all the arguments, Brea has not shown that it is likely to prevail on the merits in this Appeal. Brea fails to satisfy the first *Robinson* factor.

### 2.     Brea Fails to Show that it Will Suffer Irreparable Harm Absent a Stay

To demonstrate entitlement to a stay, Brea must show that it *will* suffer irreparable harm absent a stay. *Robinson*, 432 F.2d at 979. Brea clearly fails to meet this standard. Brea argues that if the Burlington Assignment proceeds and Burlington opens a store, Ross will claim that Brea has breached the Ross Lease and take remedial action, such as allowing Ross to pay substitute (lower) rent,[6] terminating the Ross Lease, or suing Brea for other relief. (Mem. Supp. Mot. Stay ¶¶ 56–63.) Brea contends that any costs stemming from this predictable consequence "cannot be adequately remedied by a later court decision." (Mem. Supp. Mot. Stay ¶ 63.) Brea's arguments fail for at least two reasons.

_____

[6] A provision of the Ross Lease allows Ross to pay "Substitute Rent," under certain conditions, such as a breach by Brea. (Mem. Supp. Mot. Stay ¶ 59.) Brea alleges that this Substitute Rent may be 41.8% lower than its current rent. *Id.*

First, the purported harm is entirely speculative. Brea offers no evidence indicating Ross *will* pay reduced rent, terminate its lease, or sue. Brea's claim that "Ross has been assertive and demanding in negotiating and enforcing the use provisions in its leases in the past," does not predict its future behavior with regard to the Ross Lease. Second, even were the Court to assume that Ross would take action against Brea because of the Burlington Assignment, this Court cannot determine, on the record before it, that future and speculative costs to Brea would constitute "irreparable" harm that could not be remedied in court. Because Brea fails to show that it will suffer irreparable harm absent a stay, Brea cannot satisfy the second *Robinson* factor. Brea therefore falters on the two most important *Robinson* factors.

### 3.     A Stay May Substantially Harm TRU

Brea must also show that the other parties involved in the litigation will not be substantially harmed by a stay. *Robinson*, 432 F.2d at 979. Brea offers to mitigate any potential harm to TRU or Burlington by waiving the rent pending the Appeal and tolling the "180-day 'go dark' period."[7] (Mem. Supp. Mot. Stay. ¶ 59.) In response to TRU's argument that a stay would prevent Burlington from opening its store in time for the profitable holiday season, Brea states, "the harm of one missed holiday season cannot be characterized as substantial." (Mem. Supp. Mot. Stay ¶ 67.) Brea cites to nothing in support of this claim. Although TRU does not quantify or elaborate on the potential harm to TRU or Burlington, TRU does not bear the burden of proving the potential harm. Rather, *Brea* has the burden of showing the *absence* of substantial harm. *Robinson*, 432 F.2d at 979. Brea fails to do this and therefore does not meet the third *Robinson* factor.

---

[7] The Burlington Assignment incorporates a 180-day "go dark" period which would normally require Burlington to perform alterations, remodel, and open its store within 180 days of the assignment.

10

### 4.    Denying the Stay Better Serves the Public Interest

In evaluating the public interest, courts "consider and balance the goal of efficient case administration and the right to a meaningful review on appeal." *In re Taub*, No. 08-44210, 2010 WL 3911360, at *3 (Bankr. E.D.N.Y. Oct. 1, 2010). Brea argues that granting a stay "affects one single lease of [TRU's] bankruptcy estates," and therefore does not impede efficient case administration. (Mem. Supp. Mot. Stay ¶ 74.)

Efficient case administration favors denying a stay, even though Brea challenges only a single lease. This Court agrees with the Bankrupcty Court's observation that "the goal of certainty and finality would be impeded not only in this instance . . . , but also in the effect it may have on pending and future transactions." (June 15, 2018 Hr'g Tr. 50, ECF No. 10-2.) Because Brea has failed to identify any public interest would be served by a stay, the fourth *Robinson* factor weighs against granting a stay. *In re Taub*, 2010 WL 3911360, at *3.

### 5.    All Four Factors Weigh Against Granting a Stay

To prevail on its Motion to Stay, Brea had the burden to prove: (1) that it would likely prevail on the merits of the Appeal; (2) that it would suffer irreparable harm absent an appeal; (3) that other parties would not be harmed by a stay; and, (4) that public interest favors a stay. *Robinson*, 432 F.2d at 979. Brea fails to carry its burden on each of the four factors.

Brea does not show that it would likely prevail on the Appeal or that it would suffer irreparable harm absent a stay. Although Brea offers conditions that might mitigate the harm to other parties, such as waiving rent pending the Appeal, the conditions do not eliminate the harm, and Brea cannot prove that the harm would be insubstantial. Finally, efficient case management favors denying a stay. After considering the relevant factors, the Court finds that a stay is not warranted.

## III.  Conclusion

For the foregoing reasons, the Court will deny the Motion to Stay.[8]  (ECF No. 2.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 7/23/18
Richmond, Virginia

---

[8] Given the Court's expedited ruling on the Motion to Stay, the Court will deny as moot the Motion to Expedite Consideration.  (ECF No. 4.)